## Heritage Financial Services Corporation v. Commonwealth Bancshares Corporation

*Christopher W. Mattson,* for plaintiff.
*Morris R. Brooke,* for defendant.

SCHAFFNER, *J.,* October 11, 1985—On September 26, 1985, plaintiff, Heritage Financial Ser-

vices Corporation, filed a petition for an ex parte special injunction, in accordance with Pa.R.C.P. 1531(a), and, contemporaneously, a complaint in equity. The relief sought was that the court preliminarily and permanently enjoin defendant, Commonwealth Bancshares Corporation, from acquiring and attempting to acquire shares of plaintiff's stock. On September 26, 1985, plaintiff's request for special injunctive relief was granted and, as per Pa.R.C.P. 1531(d), a hearing was held on October 1, 1985. By order dated that day we directed that the injunction continue until further order.

This matter involves the alleged violation of section 112(b) of the Pennsylvania Banking Code, as found at 7 P.S. §112(b), by defendant. Plaintiff alleges that defendant violated this section when it authorized a broker to purchase shares of plaintiff's stock, up to 24.99 percent of its outstanding shares, without first obtaining the permission of the Department of Banking.

## FINDINGS OF FACT

1. Plaintiff is Heritage Financial Services Corporation, a Pennsylvania corporation with its principal place of business located in Lewistown, Mifflin County, Pa.

2. Plaintiff owns and controls Russell National Bank, a national bank located at 32 East Market Street, Lewistown, Pa.

3. The total number of outstanding shares of Heritage Financial Services Corporation is 284,922.

4. Defendant is Commonwealth Bancshares Corporation, a Pennsylvania corporation, with its principal place of business located at 101 West Third Street, Williamsport, Lycoming County, Pa.

5. Defendant is a holding company organized under the laws of Pennsylvania and supervised by

the Board of Governors of the Federal Reserve System.

6. William D. Davis is the President of defendant corporation.

7. Prior to July 19, 1985, defendant had permission from the Federal Reserve System to hold 4.99 percent of plaintiff's stock.

8. Prior to July 19, 1985, defendant owned 4.98 percent of the voting shares of plaintiff.

9. On May 16, 1985, defendant filed an application with the Board of Governors of the Federal Reserve System for permission to increase their holdings of plaintiff's stock to exceed the 4.99 percent limitation.

10. On July 19, 1985, the Federal Reserve Bank of Philadelphia, acting pursuant to the delegated authority for the Board of Governors of the Federal Reserve System, approved this application and granted permission, with various restrictions, to defendant to acquire up to 24.99 percent of the stock of plaintiff.

11. Robert L. Shangraw is Vice President of Merrill Lynch, Pierce, Fenner & Smith, Inc. and his office is located at 437 Hepburn Center, Williamsport, Pa.

12. Defendant is a client of Mr. Shangraw.

13. William Davis, President of defendant corporation, contacted Mr. Shangraw prior to September 4, 1985 to inform him that defendant was interested in acquiring more shares of plaintiff's stock.

14. Mr. Shangraw received a letter dated September 4, 1985 from Mr. Davis instructing Mr. Shangraw that defendant desired to purchase additional shares of the stock of plaintiff.

15. In the letter dated September 4, 1985, Mr. Davis informed Mr. Shangraw that defendant had received permission from the Board of Governors of

the Federal Reserve System to purchase additional shares of plaintiff's stock up to 24.99 percent of the voting shares.

16. Mr. Davis, in his communications with Mr. Shangraw, did not limit the number of shares desired at 10 percent of plaintiff's outstanding shares.

17. This letter authorized Mr. Shangraw to begin purchasing shares of plaintiff's stock up to 24.99 percent of the outstanding shares.

18. Mr. Davis stated to Mr. Shangraw that the price to the seller would be $48 per share net.

19. At this time the actual market value of the stock was $32 - $34 per share.

20. Mr. Shangraw called his clients who owned shares of plaintiff's stock and informed them that he had a buyer who was interested in purchasing their stock at a price of $48 per share.

21. Mr. Shangraw informed these clients that he was being paid a fee to solicit these shares.

22. As of September 27, 1985, Merrill Lynch had purchased 11,398 shares or 4 percent of plaintiff's stock for defendant.

23. As of September 27, 1985, Merrill Lynch had not received any instruction from defendant to cease purchasing shares of plaintiff's stock.

24. Raymond C. Bachelier is Vice Chairman of The Savings and Trust Company of Pennsylvania, Brookville, Pa.

25. The Savings and Trust Company of Pennsylvania owns 11,045 shares or 3.88 percent of plaintiff's stock.

26. Mr. Shangraw contacted Mr. Bachelier and asked if The Savings and Trust Company of Pennsylvania was interested in selling all of their shares of plaintiff's stock.

27. Mr. Shangraw also contacted approximately 20 to 30 other clients who owned shares of plaintiff's stock.

28. William F. Roemer is the President and Chief Executive Officer of PennBank Corp., Titusville, Pa.

29. PennBank Corp. owns 21,296 shares or 7.47 percent of the plaintiff's stock.

30. Mr. Davis contacted Mr. Roemer and inquired whether PennBank Corp. would be willing to sell their stock in Heritage Financial Services Corporation.

31. On September 27, 1985, defendant filed an application with the Pennsylvania Department of Banking to purchase up to 24.99 percent of plaintiff's stock.

32. This application has not been acted upon by the Department of Banking.

## QUESTIONS PRESENTED

Four legal issues have been presented to us as a result of the pleadings filed, the testimony and evidence presented at hearing, and the arguments, thereafter, submitted. They are:

1. Is venue proper in Dauphin County?

2. Does this court have personal jurisdiction over defendant?

3. Have the acts of the defendant violated section 112(b) of the Banking Code?

4. Has federal legislation preempted Pennsylvania law so that defendant, in the context of this proceeding, is not subject to section 112(b) of the Banking Code?

## DISCUSSION

1. Is venue proper in Dauphin County?

Defendant argues that venue does not properly lie in Dauphin County because none of the solicita-

tions took place in Dauphin County. Further, defendant points out that plaintiff is considered a resident of Mifflin County, and defendant is considered a resident of Lycoming County. On the other hand, plaintiff contends that the transaction out of which the cause of action arose occurred in Dauphin County because the entire controversy revolves around defendant's failure to receive prior written approval from the Department of Banking to purchase additional shares of plaintiff's stock. Because the Department of Banking is located in Dauphin County, plaintiff reasons that proper venue lies in Dauphin County.

Rule of Civil Procedure 2179(a) governs the question of venue when a corporation is a party to the suit. Rule 2179(a) states that a personal action against a corporation or a similar entity may be brought in, and only in:

(1) The county where its registered office or principal place of business is located, or

(2) A county where it regularly conducts business, or

(3) The county where the cause of action arose, or

(4) A county where a transaction or occurrence took place out of which the cause of action arose.

Plaintiff argues that the failure to file the application before the solicitation, and the failure to receive the requisite approval from the Department of Banking, constitute transactions or occurrences within the meaning of Pa.R.C.P. 2179(a)(4).

It has been established that the failure to do a required act is an occurrence under Rule 2179 and venue is proper in the county where the act was to have been performed. In Burdett Oxygen Company v. I. R. Wolfe & Sons, Inc., 433 Pa. 291, 249 A.2d 299 (1969), the court held that the failure to send

orders to a plaintiff located in Montgomery County constituted an occurrence in line with Rule 2179 and proper venue was found in Montgomery County. This principle was followed in Oxford Container Co. v. C. R. Containers E-T-C Limited, 23 D.&C. 3d 613 (1983).

Here, the whole issue of the case, and the only issue of the case, surrounds defendant's obligation to the Banking Department. Did defendant have to file with the department or not? Was the filing that was done, sufficient? May defendant carry out its solicitation prior to the department acting upon its request for approval? Defendant's Chief Executive Officer, Mr. Davis, in fact traveled to Harrisburg on September 27, 1985, and filed, in Dauphin County, his bank's application for permission under section 112 of the Act. We believe Dauphin County is where a transaction or occurrence took place out of which the cause of action arose, and we feel venue proper with us.

2. Does this court have personal jurisdiction over defendant?

Defendant argues that this court lacks personal jurisdiction over defendant because service of process upon defendant was invalid, proper venue being elsewhere. Because we have determined venue was proper in Dauphin County, Pa.R.C.P. 2079(b) governs the proper service of process and we find that the defendant was properly served by deputy sheriff in Lycoming County.

3. Have the acts of defendant violated section 112(b) of the Banking Code?

Commonwealth Bancshares Corporation argues it has not violated section 112(b) of the Banking Code because it has not actually acquired more than 10 percent of the outstanding shares of plaintiff's stock. Plaintiff contends that even though defend-

ant did not actually acquire shares in excess of the 10 percent limitation, it solicited for purchase shares in a number exceeding this limitation and in fact intended to acquire up to 24.99 percent of the outstanding shares. It was this intention, combined with the solicitation, that plaintiff argues constituted a violation of the Banking Code.

Section 112(b) states as follows:

"Except as provided in subsection (i), it shall be unlawful, without the prior written approval of the department pursuant to this section, for any person to acquire, or to make a proposal to acquire, shares of an institution or shares of a corporation which controls an institution if the aggregate number of shares held after such acquisition would total more than 10 percent of the outstanding shares of such institution or corporation, whether or not any prior acquisition had been approved by the department pursuant to this section." 7 P.S. §112(b).

For this case, there are two crucial portions of this section. The first is: ". . . . or to make a proposal to acquire, . . ." The second is: ". . . . if the aggregate number of shares held after such acquisition would total more than 10 percent of the outstanding shares of such institution."

In other words, did defendant make a proposal to acquire shares of plaintiff that would have resulted in its ownership of 11 percent or more of plaintiff's stock? "[p]roposal to acquire" is defined in this statute as "any offer or attempt to buy or solicitation of án offer to sell or other attempt or offer to acquire by any means, directly or indirectly, through an intermediary or otherwise." 7 P.S. §112(a)(iv). We have no difficulty in concluding that the defendant "made a proposal to acquire" stock of plaintiff as that term has meaning in section 112 of the act.

Plaintiff's Exhibit No. 5, a letter from defendant's Chief Executive Officer to Merrill Lynch, Pierce, Fenner & Smith, dated September 4, 1985, by itself establishes this plan. The only other question is whether defendant sought an acquisition that would increase its holdings in plaintiff's institution to more than 10 percent of plaintiff's stock. We have no difficulty in determining that defendant placed no limit on its acquisition desires other than the 24.99 percent figure set forth in its letter to Merrill Lynch.

The evidence at the hearing reveals to us that Merrill Lynch in fact had purchased, for the defendant, four percent of plaintiff's stock as of September 27, 1985. Further, Mr. Shangraw had contacted The Savings and Trust Company of Pennsylvania concerning the sale of their 3.88 percent of plaintiff's stock and had contacted, as well, other Merrill Lynch customers whose shares equaled 1.2 percent of plaintiff's outstanding stock. Mr. Davis, defendant's Chief Executive Officer, had, himself, contacted PennBank Corporation and sought to purchase their 7.47 percentage of plaintiff's stock. Thus, the total percentage of shares that were solicited, so far as the record before us reflects, is at least 16.55 percent of plaintiff's total shares, not counting the 4.98 percent of those shares defendant already owned. As noted, there is no indication in the record that defendant limited its solicitation to 10 percent of plaintiff's stock. We believe, therefore, it absolutely clear that defendant's act was within the coverage of section 112(b) of the act and defendant, admittedly, did not have prior approval of the department for this solicitation.

Having determined that defendant's conduct is in violation of this section, we must determine that the

remedy plaintiff sought, and which was preliminarily granted, was appropriate. The Banking Code answers that question for us. Section 2105(b) of the act provides:

"Any person who violates any provision of section 112 shall be liable to any institution or corporation or shareholder thereof damaged thereby and, in the discretion of the court, for punitive damages. *The provisions of section 112 shall be enforceable in any action* or suit *instituted by* the department or by *any such institution*, corporation or shareholder *to enjoin or restrain any violation or threatened violation of that section.*" (Emphasis added.)

4. Has federal legislation pre-empted Pennsylvania law so that defendant, in the context of this proceeding, is not subject to section 112(b) of the Banking Code?

Defendant argued at the hearing, but not in its brief before us, that the Bank Holding Company Act of 1956, 12 U.S.C. §1841-50 pre-empted section 112 of the Banking Code and made it inapplicable to defendant's acts. Section 7 of the Bank Holding Company Act, 12 U.S.C. §1846, states that:

"The enactment by the Congress of this chapter shall not be construed as preventing any state from exercising such powers and jurisdiction which it now has or may hereafter have with respect to banks, bank holding companies, and the subsidiaries thereof."

We believe the Banking Department's jurisdiction is not pre-empted by this act of Congress and we believe the Banking Code's provisions pertinent to this proceeding.

Thus, we find defendant's acts in violation of the Banking Code and, in accordance with the provisions of that Code, injunctive relief appropriate.

632

## CONCLUSIONS OF LAW

1. Section 2105(b) of the Banking Code, 7 P.S. §2105(b), provides this court with the power to enjoin defendant from further violation of section 112(b) of the Banking Code, 7 P.S. §112(b), if we find that such a violation has occurred.

2. We find that defendant's act of authorizing Merrill Lynch to purchase additional shares of plaintiff's stock without the imposition of any limitation on the number of shares to be purchased to be a violation of section 112(b) of the Banking Code.

3. This injunction is reasonably necessary for the protection of plaintiff and imposes no undue hardship on defendant.

4. Plaintiff has no adequate remedy of law.

## DECREE NISI

And now, this October 11, 1985, it is hereby ordered that Commonwealth Bancshares Corporation and its employees and agents are prohibited and enjoined from acquiring or attempting to acquire any shares of Heritage Financial Services Corporation until and unless defendant obtains approval for such acts from the Pennsylvania Department of Banking as required under section 112 of the Pennsylvania Banking Code.